FIFTH DIVISION
November 14, 2008

No. 1-07-2950

| | | |
|---|---|---|
| DANIEL KATALINIC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 07 CH 12890 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE MUNICIPAL | ) | |
| EMPLOYEES', OFFICERS', AND OFFICIALS' ANNUITY AND | ) | |
| BENEFIT FUND, JOSEPH MALATESTA, STEVEN J. LUX, | ) | |
| STEPHANIE D. NEELY, PETER BREJNAK and JOHN K. | ) | |
| GIBSON, in Their Official Capacities, | ) | The Honorable |
| | ) | LeRoy Martin, Jr., |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following an administrative hearing, defendants-appellees The Board of Trustees of the

Municipal Employees', Officers', and Officials' Annuity and Benefit Fund (Fund), and its

members Joseph Malatesta, Steven J. Lux, Stephanie D. Neely, Peter Brejnak and John K.

Gibson, in their official capacities (collectively, Board) held that plaintiff-appellant Daniel

Katalinic (plaintiff) forfeited his annuity and other benefits from his municipal employment due

to his felony conviction. The trial court affirmed the Board's decision. Plaintiff appeals,

contending that, because his conviction was not connected to his employment, the Board legally

erred in ordering forfeiture. He asks that we reverse the decisions of the Board and the trial court

and reinstate his annuity. For the following reasons, we affirm.

BACKGROUND

The following facts have been taken in large part from plaintiff's plea agreement in the

federal case pursued against him which underlies the instant matter.

Plaintiff worked for the City of Chicago (City) for 33 years. Between 2000 and 2003, he was employed as the deputy commissioner of street operations for the department of streets and sanitation.

In 2000, upon the request of Robert Sorich, assistant to the director of the mayor's office of intergovernmental affairs, plaintiff formed a political organization of coemployees to perform political tasks during various election periods. As the head of the organization, which grew to over 200 streets and sanitation employees, plaintiff would obtain promotions for his members based on the amount of political work each performed. Once job openings with the City were posted, plaintiff would submit prioritized lists of employees in the organization to Sorich for these positions, while giving lower priority to those not in his organization. Plaintiff knew that the names he submitted were to be rewarded fraudulently for political work with promotions and, indeed, that the people he included on lists for promotions routinely received them. Plaintiff retired in June 2003.

In early 2004, City officials announced new job openings, namely, for career service motor truck drivers. As he had done before, plaintiff created, prioritized and submitted a list of workers for these positions to Sorich, giving top billing to those within his organization. Again, those workers prioritized by plaintiff received the positions.

In 2005, following a federal investigation involving several people including Sorich, plaintiff was indicted by a federal grand jury for mail fraud. The count that ultimately led to his conviction charged that on July 15, 2004, plaintiff knowingly caused mail delivery of a letter to a

streets and sanitation employee advising him of a promotion to a career service motor truck driver position. Plaintiff entered into a plea agreement on this charge and was convicted.[1] He was sentenced to federal imprisonment.

In late 2006, the Fund moved to suspend plaintiff's annuity payments and for leave to file a motion for summary judgment. They asserted that plaintiff's guilty plea disqualified him from receiving benefits under the Illinois Pension Code (Code) (40 ILCS 5/8-101 *et seq.* (West 2004)). The cause proceeded before the Board, which ultimately granted the motion for summary judgment. In its decision, the Board cited section 8-251 of the Code, which states in part:

> "None of the benefits provided for in this Article shall be paid to any
>
> person who is convicted of any felony relating to or arising out of or in connection
>
> with his service as a municipal employee." 40 ILCS 5/8-251 (West 2004).

The Board found that plaintiff's "felonious conduct started with his City employment and continued into retirement." Accordingly, it held that there was no issue of material fact that he was convicted of a felony "relating to or arising out of or in connection with his service as a municipal employee," and, as the Code's felony forfeiture provision "is not limited to felonies

---

[1] In his plea agreement, plaintiff also stipulated to certain uncharged bribery conduct. Although he seemingly makes this an issue in his brief on appeal, it is clear from the record, and plaintiff ultimately concedes, that the bribery conduct neither formed the basis of his federal conviction nor was ever mentioned by the Board (or trial court) as a basis for the forfeiture of his pension. We mention the bribery conduct only because plaintiff did so on appeal; it is otherwise wholly irrelevant to the instant cause.

that are committed prior to an individual's retirement," plaintiff's conviction forfeited his pension. The Board ordered the forfeiture of his annuity and other benefits effective December 2006. The trial court affirmed the Board's decision.

ANALYSIS

On appeal, plaintiff contends that, because his felony conviction was not connected to his City employment, the Board legally erred in ordering pension forfeiture. He asserts that section 8-251 of the Code requires that there must be a connection or nexus between his conviction and his employment and, as his employment was not a necessary condition to his conviction, no such connection existed. He further argues that his political organization, which was the basis for his conviction, was independent of his public employment, he was not employed at the time of conviction, and the conviction would have occurred regardless of his employment. Relying principally on Romano v. Municipal Employees Annuity & Benefit Fund of Chicago, No. 1-07-1132 (August 5, 2008) (Hall, J., dissenting)[2], and Cullen v. Retirement Board of the Policeman's Annuity & Benefit Fund, 271 Ill. App. 3d 1105 (1995), for his arguments, and attempting to distinguish Devoney v. Retirement Board of the Policemen's Annuity & Benefit Fund for the City of Chicago, 199 Ill. 2d 414 (2002), Bauer v. State Employees' Retirement System of Illinois, 366 Ill. App. 3d 1007 (2006), and Bloom v. Municipal Employees' Annuity & Benefit Fund of Chicago, 339 Ill. App. 3d 807 (2003), plaintiff insists that the pension statute must be liberally

_____

[2]On August 12, 2008, plaintiff filed a motion with this court to cite Romano as supplemental authority. With no response having been filed by the Board, this court allowed plaintiff's motion.

construed in his favor.

As a threshold matter, we note that the parties disagree regarding the appropriate standard of review in this cause. Plaintiff proposes a *de novo* standard, arguing that we are being asked to interpret section 8-251 of the Code and, thus, a legal question is involved. The Board, meanwhile, cites general principles of administrative law, asserting that a manifest weight standard is required since an administrative body has already made determinations of fact here.

Both parties are partially correct. In an appeal from a decision of the trial court on a complaint for administrative review, we review the decision issued by the Board rather than that of the trial court. See Bloom, 339 Ill. App. 3d at 811; accord Daniels v. Police Board, 338 Ill. App. 3d 851, 858 (2003). The Board's findings of fact are considered to be *prima facie* true and correct, and we may not reverse these or the Board's decision on review unless they are against the manifest weight of the evidence. See Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 88 (1992). However, the issue before us is whether plaintiff's federal conviction for mail fraud was a "felony relating to or arising out of or in connection with his service" as a municipal employee and, thus, required forfeiture of his benefits under section 8-251 of the Code. 40 ILCS 5/8-251 (West 2004). Interpretation of a statute is a question of law requiring *de novo* review. See Bauer, 366 Ill. App. 3d at 1013. Moreover, as noted earlier, the Board resolved this matter with the entry of summary judgment in favor of the Fund and against plaintiff. We review the grant of summary judgment--which is proper when the pleadings, affidavits, depositions and admissions of record, construed strictly against the moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to

5

judgment as a matter of law--on a *de novo* basis. See <u>Rich v. Principal Life Insurance Co.</u>, 226 Ill. 2d 359, 370 (2007); <u>Morris v. Margulis</u>, 197 Ill. 2d 28, 35 (2001).

That said, our agreement with plaintiff and his arguments on appeal ends with the standard of review.

<u>Bauer</u>, cited by both parties here, is, we believe, the seminal case regarding public employment and pension forfeiture. In addition to the fact that <u>Bauer</u> is directly on point with the instant matter, that case provides a thorough overview of pension forfeiture law based on a series of legal precedent originating from our state supreme court.

In <u>Bauer</u>, the plaintiff worked as Inspector General of the Illinois Secretary of State's office. He pled guilty to one count of federal felony obstruction of justice, was convicted and, later, was held to have forfeited his retirement benefits pursuant to a provision in the Code with language identical to that involved herein. On appeal from that decision, the plaintiff argued, as plaintiff does here, that his conviction did not relate to or arise out of, nor was it connected with, his employment. In Bauer's case, while he was Inspector General, a federal investigation began into the licensing process at the Secretary of State's office; internal memoranda were exchanged between Bauer and other Secretary of State employees. Bauer then left his position as Inspector General. Nine months later, he spoke with his former secretary who, unbeknownst to Bauer, had been cooperating with federal prosecutors. Bauer told his secretary to destroy or conceal certain sensitive documents being sought by federal investigators. See <u>Bauer</u>, 366 Ill. App. 3d at 1009-10.

On appeal from an administrative finding that he forfeited his pension benefits because of

his conviction, the Bauer court affirmed. Noting that the issue before it was whether Bauer's conviction was a "felony relating to or arising out of or in connection with his service" as Inspector General and, thus, required forfeiture of his pension under the Code, the court conducted an examination of prior cases to determine an appropriate test for the cited phrase. See Bauer, 366 Ill. App. 3d at 1011.

First, the Bauer court looked at Devoney. There, a police lieutenant was convicted of federal mail fraud due to his involvement in an insurance scheme that originated from his friendship with a criminal. Though his conduct occurred while he was off-duty, the police board terminated his pension benefits pursuant to the Code and language identical to that of section 8-251. Our state supreme court upheld the termination. In doing so, the Devoney court reasoned that when a court applies pension termination statutes such as the provisions in the Code, "the pivotal inquiry is whether a nexus exists between the employee's criminal wrongdoing and the performance of his official duties." Devoney, 199 Ill. 2d at 419. Factually, the supreme court observed that the criminal had developed a friendship with Devoney, a lieutenant, because the criminal considered it advantageous to have such high-ranking police connections; that Devoney knew the man was a criminal and Devoney had used his position on the criminal's behalf before; and that, though Devoney was never identified as a police officer in his federal indictment, the circumstances surrounding the crime showed that the offense was related to Devoney's work as a lieutenant. Ultimately, the Devoney court issued a "but-for" test, holding that the requisite nexus for pension forfeiture exists if the facts and circumstances establish that, but for the pension claimant's status as an employee, he would not have been in a position to commit the felony in

7

question. See Devoney, 199 Ill. 2d at 423 (ample support for board's forfeiture finding existed where " 'but for the fact that Devoney was a [p]olice [o]fficer of high rank,' " he " 'would not have been in a position or selected to participate in the scheme to defraud [leading to his conviction]' "; his participation in the crime "was the product of his status as a law enforcement official").

The Bauer court noted that Devoney's principles were further discussed in Bloom, another case cited by both parties here. In Bloom, an alderman pleaded guilty to filing a federal income tax return for his private real estate business which falsely listed certain payments as rental income. In his plea, Bloom admitted that some of these payments had been given to him in exchange for the improper use of his name, official position and influence as an alderman. On appeal from the forfeiture of his pension based on a Code provision identical to the one at issue, the Bloom court followed Devoney in its examination regarding whether a nexus existed between Bloom's wrongdoing and the performance of his official duties. See Bloom, 339 Ill. App. 3d at 811. The Bloom court noted that an analysis of the "relating to, arising out of or in connection with" language of the Code does not end with a showing that the felony does not call for proof of official misconduct, nor is the "but for" test mandated in every such analysis. See Bloom, 339 Ill. App. 3d at 812. Rather, the Bloom court employed a "substantial factor" test as an alternative to the "but for" test, holding that the necessary causal link, or nexus, is established if the wrongdoing " 'was a material element and a substantial factor' in bringing about the subsequent occurrence." Bloom, 339 Ill. App. 3d at 815, quoting Thacker v. UNR Industries, Inc., 151 Ill. 2d 343, 354-55 (1992) (finding nexus between felony of filing false return and public service after

concluding that improper payments in exchange for using status as alderman was substantial factor in conviction).

Finally, Bauer noted a parallel approach in Goff v. Teachers' Retirement System, 305 Ill. App. 3d 190 (1999). There, the plaintiff, a retired school teacher, pleaded guilty to the aggravated criminal sexual abuse of children attending his school. Although the conduct underlying his convictions never took place on school property or at school events, his pension was revoked pursuant to, as in Devoney, Bloom and Bauer, language in the Code identical to that in the instant case. On appeal, the plaintiff argued that his pension could only be revoked if the felony had occurred on school time or school property. Rejecting this, the Goff court held that this was too narrow a construction of the "relating to or arising out of or in connection with" language of the Code and, instead, reasoned that as long as the conviction " 'is in *some way* connected with the employment so that there is a causal connection' " between the employment and the conviction, then the conviction can be said to arise out of employment, sufficient with the forfeiture provision. (Emphasis in original.) Goff, 305 Ill. App. 3d at 195, quoting Consolidated R. Corp. v. Liberty Mutual Insurance Co., 92 Ill. App. 3d 1066, 1068-69 (1981).

After discussing these cases, the Bauer court applied their principles to the facts and circumstances surrounding Bauer's felony conviction for obstruction. First, under Devoney's "but for" test, the court found that there was a clear nexus between the conviction and his employment, primarily because Bauer's obstruction was a product of his status as Inspector General: "but for the fact that Bauer had been Inspector General, he would not have been in a position to obstruct the federal investigation of the Secretary of State's office." Bauer, 366 Ill.

9

App. 3d at 1020. Next, under Bloom's "substantial factor" test, the Bauer court found the requisite nexus under the "relating to or arising out of or in connection with" language of the Code when it reasoned that Bauer's service as Inspector General was a material element and substantial factor in bringing about the obstruction. See Bauer, 366 Ill. App. 3d at 1023. And, under Goff's "some way connected" test, the Bauer court found that the origin of Bauer's felony was connected to his employment "so that there was a causal connection between the employment and the felony." Bauer, 366 Ill. App. 3d at 1024.

Just as the Bauer court ultimately held that the conviction at issue was a felony "relating to or arising out of or in connection with" Bauer's service and employment sufficient to satisfy a decision of pension forfeiture, we too conclude the same with respect to plaintiff here.

Plaintiff was the deputy commissioner of street operations for the department of streets and sanitation for the City of Chicago. In his plea agreement, he admitted that Sorich, an assistant to the director of the mayor's office of intergovernmental affairs, asked him to form a political organization to help during elections. Plaintiff's organization grew to over 200 people, and "almost all," he admitted, "were Streets and Sanitation workers," *i.e.*, his own employees. Plaintiff further described that he would submit a list of workers "who were seeking jobs and job promotions, as well as other assistance at the City." Accordingly, plaintiff knew these workers and knew they were looking for job promotions. Plaintiff further admitted that he prioritized the lists of workers he submitted and knew that, pursuant to the scheme, his workers would be given the promotions fraudulently and in direct violation of the law. Finally, plaintiff admitted that he mailed a prioritized list, therefore committing federal mail fraud.

We find that there was a clear nexus between plaintiff's conviction and his employment as required by the Code's language. First, but for the fact that plaintiff was a deputy commissioner of the department of streets and sanitation, he would not have been in a position to become involved in the hiring scheme and, ultimately, to commit mail fraud in relation thereto. Plaintiff admitted that someone from the mayor's office of intergovernmental affairs approached him and asked him to start the organization. We are hard-pressed to assume, as plaintiff would have us, that this would have occurred had plaintiff not been a municipal employee or, for that matter, had been in a lesser position at the department of streets and sanitation. Moreover, as he admitted, "almost all" of the organization's 200 members were his own employees. Just as with the relationship between the lieutenant and criminal in Devoney, it is clear to us that assistant director Sorich of the mayor's office cultivated a relationship with plaintiff here because he considered it to be advantageous to have connections with the deputy commissioner of the streets and sanitation department who oversaw a multitude of municipal employees who, in turn, were prime candidates to become political workers looking to later be rewarded. In other words, but for the fact that plaintiff was a deputy commissioner of higher-than-average rank, he would not have been in a position or selected by Sorich to participate in the scheme. Plaintiff's conviction, then, was clearly a product of his status as deputy commissioner. In conjunction with this, we find that plaintiff's service was a material element and a substantial factor in bringing about the conduct underlying his conviction. Again, an analysis of the "relating to or arising out of or in connection with" language of the Code does not end with a showing that the felony did not require proof of official misconduct. See Bloom, 339 Ill. App. 3d at 812; accord Bauer, 366 Ill.

11

App. 3d at 1024. Moreover, as we discussed, the origins of plaintiff's conviction were connected to his employment so that there was a causal connection between his employment and the felony.

As in Bauer, where the employee had left his post before he committed the acts underlying his conviction, plaintiff's case here presents somewhat of a twist. Plaintiff makes much of the fact that when he committed the acts that led to his conviction, he was no longer serving as a municipal employee (he was retired). While this fact is one that was not present in Devoney, Bloom or Goff, it does not, as the Bauer court found, render the principles set forth in those cases inapplicable. Rather, "neither the supreme court in Devoney nor the appellate court in Goff and Bloom stated that the passage of time between *** employment and the commission of a felony somehow negates the possibility that a nexus can exist between the two." Bauer, 366 Ill. App. 3d at 1024. Moreover, nothing in the plain language of section 8-251 states that only those felonies which are committed while the pension claimant is employed may relate to or arise out of or in connection with his service as a employee, nor does it state that a felony cannot relate to or arise out of or in connection with employment if the felony occurs after the claimant has left that employment. See Bauer, 366 Ill. App. 3d at 1024-25 ("[t]he fact that Bauer did not obstruct justice until after he left the office of the Secretary of State does not mean the obstruction was not a 'felony relating to or arising out of or in connection with his service as an employee' ").

Plaintiff's mail fraud here was directly and inherently related to his service as deputy commissioner. His conduct of making and prioritizing lists of his own employees and submitting them to the mayor's office began while he was employed as such and continued after he retired.

12

Though this extended beyond his period of employment, he was attempting to fraudulently secure promotions and jobs for his employees who were still working in his department. See Bauer, 366 Ill. App. 3d at 1025 ("the trust citizens place in public employees can in some circumstances extend beyond the period of employment with respect to certain types of conduct").

Cullen and Romano are distinguishable from the instant case and, thus, plaintiff's reliance on them in support of his arguments is meritless. In Cullen, a police officer was convicted of first degree murder when he shot and killed a man following a traffic altercation, and his retirement benefits were terminated. On appeal to reinstate his benefits, the Cullen court agreed with the plaintiff, finding that his criminal actions were not related to, nor arose out of nor were connected with, his service as a police officer. See Cullen, 271 Ill. App. 3d at 1109. However, the Cullen court made clear that the plaintiff was off-duty at the time of the shooting, he was in plain clothes, he used a pistol that was not his official service weapon, he did not identify himself as a police officer, and he had not placed or attempted to place the victim under arrest. See Cullen, 271 Ill. App. 3d at 1107. Simply because plaintiff in the instant case was "off-duty" does not render it similar to the facts presented in Cullen. There was no evidence demonstrating that Cullen's criminal actions leading to his conviction related to or arose out of or were connected with his employment as a police officer. In contrast, plaintiff, though retired, interacted with his (former) employees who were still working for the City to find out who was looking for promotions and used his (former) position to perpetuate the hiring scheme via his mailing of the list he created to the mayor's office. See, *e.g.*, Devoney, 199 Ill. 2d 414, Goff, 305 Ill. App. 3d

13

190 (finding that nexus existed and, thus, that forfeiture of benefits was proper even though the plaintiffs were not "on-duty" at time of conduct underlying convictions).

While the facts in Romano (Hall, J., dissenting) are more similar to the instant case than those of Cullen, we find that it is likewise distinguishable and unsupportive of plaintiff's arguments. In Romano, the plaintiff, an operating engineer in the department of water of the City of Chicago, pleaded guilty to federal mail fraud due to his participation in a bribery scheme to obtain trucking business. Romano was asked by a former employee of the department of water to participate in the formation and operation of a trucking company and, in exchange for a weekly payment to the first deputy commissioner of the department of water, his company would be selected by the City for its "Hired Truck Program." Following his conviction, the plaintiff's pension benefits were revoked pursuant to section 8-251 of the Code and he appealed. Recognizing Devoney's "but for" test, the Romano majority noted that nothing in the plea agreement revealed the reason why the plaintiff was asked to participate in the scheme, nor was there any evidence supporting an inference that the relationship between the plaintiff and the other participants was cultivated because the plaintiff was a municipal employee or that his status was in any way relevant to his participation; the majority concluded that the evidence showed simply that the relationship originated between people who worked in the same department. Romano, slip op. at 6-7.

However, a dissent was filed in Romano that disagreed with the majority's insistence that the plaintiff's conviction did not relate to or arise out of his employment. Again, citing Devoney, the dissent noted that Romano was a water department employee who was solicited by a former

water department employee to participate in a scheme to bribe another water department employee. From this, it found that there was no evidence that the solicitor involved the plaintiff in the scheme "for any reason other than his employment in the water department." Romano, slip op. at 11 (Hall, J., dissenting). Because this "friendship" had its origins in the plaintiff's status as a municipal employee, there was a substantial connection between the plaintiff's employment and his conviction, satisfying the nexus requirement of section 8-251. Romano, slip op. at 10-11.

Contrary to the majority's comments in Romano, and in line with its dissent, the evidence in the instant case demonstrates more than a simple relationship between coemployees. We note that plaintiff and Sorich did not work in the same department; plaintiff worked in streets and sanitation and Sorich worked at the mayor's office. Moreover, unlike the plaintiff in Romano, plaintiff here held a municipal position with status; he was the deputy commissioner, not an ordinary employee. That Sorich's and plaintiff's paths would have crossed, or that Sorich would have asked plaintiff to participate in the instant scheme, if plaintiff had not been employed in the position he held, is illogical. Moreover, plaintiff admitted in his plea agreement that he knew which positions the City was posting as open and which of his employees were actively seeking such promotions or jobs with the City. "Almost all" of the 200 people in his organization were his streets and sanitation employees, and almost all of those whose names he submitted in his prioritized lists fraudulently received promotions. He stated in federal court that "it was [his] understanding that [the mayor's office] communicated with the Streets and Sanitation Commissioner's office about who would be hired."

From all this, it is clear to us that, based on the instant set of circumstances, the requisite

15

nexus between plaintiff's employment and his conviction was present to satisfy the "related to or arising out of or in connection with" language of section 8-251 of the Code. Therefore, we hold that there is no genuine issue of material fact and that the Board did not err in granting summary judgment to the Fund.

CONCLUSION

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court upholding the Board's termination of plaintiff's annuity and other benefits from his municipal employment due to forfeiture pursuant to his felony conviction.

Affirmed.

TULLY and GALLAGHER, JJ., concur.

No. 1-07-2950

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**

| | |
|---|---|
| Please use the following form | Daniel Katalinic,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>Board of Trustees of the Municipal Employees', Officers', and Officials' Annuity and Benefit Fund, Joseph Malatesta, Steven J. Lux, Stephanie D. Neely, Peter Brejnak and John K. Gibson, in Their Official Capacities,<br><br>Defendants-Appellees. |

| | |
|---|---|
| Docket No.<br><br>COURT<br>Opinion<br>Filed | No. 1-07-2950<br><br>Appellate Court of Illinois<br>First District, <u>FIFTH</u> Division<br><br><u>November 14, 2008</u><br>(Give month, day and year) |
| JUSTICES | PRESIDING JUSTICE JAMES FITZGERALD SMITH DELIVERED THE MODIFIED OPINION OF THE COURT:<br><br>TULLY and GALLAGHER, JJ., concur. |
| APPEAL from the Circuit Court of Cook County; the Hon_____ Judge Presiding. | Lower Court and Trial Judge(s) in form indicated in margin:<br><br>Appeal from the Circuit Court of Cook County.<br><br>The Hon. <u>LeROY MARTIN, JR.,</u> Judge presiding. |
| FOR APPELLANTS<br>John Doe, of Chicago<br><br>For APPELLEES, : | Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel. Indicate the word or NONE if not represented.<br><br><u>APPELLANT: MARC MARTIN, LTD., Chicago, IL Marc W. Martin; KRALOVEC MEENAN, LLP, Chicago, IL Michael J. Kralovec</u> |
| Smith and Smith of Chicago, | <u>APPELLEES: FREDERICK P. HEISS and WILLIAM A. MAROVITZ, Chicago, IL Frederick P. Heiss and William A. Marovitz</u> |
| (Joseph Brown, of counsel)<br>Add attorneys for third-party appellants and/or appellees. | |